## IN RE SUSAN PIERPOINT'S WILL.

January Term, 1900.

Present : TAFT, C. J., ROWELL, TYLER, MUNSON, START and THOMPSON, JJ.

Opinion filed April 13, 1900.

*Construction of wills—Meaning given to the word "established"*—To give effect to the probable intention of a testatrix as gathered from the language of her will, a hospital was held to have been "established" within five years from her death, when, beginning shortly after her death, a movement was started and thereafter carried forward without cessation, which, within the five years, resulted in a charter for its establishment, an organization thereunder, the securing of substantial contributions, the acquisition of a building site and preparations for building, and which, within eighteen months after the expiration of the five years, brought the hospital into actual operation.

APPEAL from a decree of the Probate Court construing certain clauses in the will of Susan Pierpoint, deceased. The Trustees of the Rutland Hospital and the Rutland Missionary Association each claimed the same property by virtue of the clauses in question. Trial by court, Rutland County, March Term, 1899, *Watson*, J., presiding. Judgment on facts found in favor of the Trustees of the Hospital. The Rutland Missionary Association excepted.

*Joel C. Baker* and *T. W. Moloney* for the Trustees of the Rutland Hospital.

*Henry A. Harman* and *George E. Lawrence* for the Rutland Missionary Association.

TYLER, J. This case comes here upon a statement of facts found by the trial court.

The clauses in the will bearing upon the question submitted are as follows :

"I give and bequeath to my beloved sister, Julia Pierpoint, all my estate, real and personal, which I now hold in my own right, and also, all my right and interest both in real and personal

property in the estate of my father, the late Robert Pierpoint of Rutland, deceased, to have and to hold the same to her and to her heirs, executors, administrators, and assigns forever, on the following conditions, namely :

"Provided that my sister, the said Julia Pierpoint, after my death by a will or otherwise, disposes of said property. If not disposed of by her in any way, I wish my executors, whom I hereby name, viz., Henry F. Field and George T. Chaffee, both of said Rutland, to distribute said property as follows :

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

"The residue of my estate, if any, I give and bequeath in trust to a board of five trustees, two to be appointed by the Congregational Church, one by the Baptist Church, one by the Episcopal Church, and one by the Methodist Church, in said Town of Rutland, to be by said board held and invested, which with the income thereof, is to constitute the nucleus of a fund that is to be applied and used for the benefit of said town in establishing and maintaining a hospital for the sick and lame in said town.

"Any vacancy in said board caused by death or incapacity to act, to be filled by the survivors of said board.

"If within five years after my decease such hospital shall not be established, such residue and the increase and income thereof is to be given to the Rutland Missionary Association to be by them appropriated for the purpose of aiding the poor and afflicted at the discretion of the board of managers of said Missionary Association."

Susan Pierpoint died Febuary. 20, 1890, and her will was probated April 15, 1890. Julia died May 9, 1897, without making any disposition of the property left her by the will, except one hundred dollars paid her by the executor which she used, and a deed of the " Pine Hill" land hereinafter referred to.

On May 8, 1891, a meeting of those interested in the hospital project was held and committees were appointed looking to the establishment of a hospital. At this meeting a provisional

organization was formed, which held meetings from time to time thereafter, until the organization of the "Rutland Hospital" under its charter granted by the legislature and approved November 21, 1892. The organization was on the 15th day of March, 1893.

Just before Julia died, savings bank books of Susan Pierpoint, amounting to some $1800 were brought to the executors of Susan's will and out of this they paid Julia, immediately, at her request, $100. Other than these bank books, no part of the property belonging to Susan at her decease, came into the hands of the executors of her will, until after the death of Julia.

On May 3, 1893, Evelyn Pierpoint, a brother of Susan and Julia Pierpoint, and Julia Pierpoint as legatee under Susan's will, by deed transferred to the Rutland Hospital the land on " Pine Hill," so-called, which was owned by Evelyn, Julia, and Susan together, and contained between four and five acres, and later, Evelyn and Julia executed and delivered to the Rutland Hospital a paper extending the time limited in the condition of the deed of May 3, 1893.

The conveyance of this land was accepted by the Rutland Hospital for the purpose and with the intention of locating a hospital thereon, and upon its conveyance an architect was employed who assisted the directors in locating the building, and stakes were driven into the ground showing its location, with the purpose by the directors of proceeding at once with laying the foundation. Some work was done on the land in clearing up briers and brush there growing. The architects were paid $468.99 for plans of the building. Taxes to the amount of $50 were paid. A surveyor was paid $14 for services in locating the building, and he was also paid for other work. The common labor on the lot was given.

Preparations were made for laying out driveways, etc. Chaffee Brothers, in a directors' meeting, offered to give one hundred thousand bricks, of the value of six dollars a thousand,

and the offer was accepted by the directors.    These bricks were to be used in the erection of the hospital building.

It was found that there would be difficulty in raising the necessary money with which to erect the building.    Some of the directors were anxious to proceed with it, expend what money they then had on hand and trust to subscriptions coming to complete it, but this was thought by others to be unwise.    Money could not be raised by mortgage on the property, because, owing to the condition in the deed, no one would take such a mortgage and advance the money thereon.    With this condition of things existing, the Rutland Hospital decided to purchase for a hospital, and did purchase on May 5, 1896, the "Sheldon property," so-called, which already had thereon suitable buildings for that purpose.

From the time of the first meeting on May 8, 1891, to September 1, 1896, there was no cessation in the efforts and work of putting the hospital in operation.    On the last named date the hospital on the Sheldon property was opened for patients, and has been in active operation ever since.    The accumulations of the organization to March 13, 1895, and on hand, as shown by the treasurer's report, were $13,875.33.    Chaffee Brothers gave the Hospital $1,000 in money in lieu of the one hundred thousand bricks, and this was agreed to by them at the time the Rutland Hospital decided to purchase the Sheldon property.    The Pierpoint Pine Hill property was worth $5,000 for Hospital purposes, but was not worth that sum for any other use.

The Rutland Missionary Association was organized as a corporation in the year 1867, and five years later as a voluntary association, and has ever since been active in doing an extensive charitable work.    The testatrix was one of its first members and continued this connection until her death.

It appeared that the different churches named in the will appointed a board of hospital trustees as required by the residuary clause, but not within five years from the testatrix' decease.

It is evident that the testatrix did not expect that her bequest would enable the trustees to build and furnish a hospital, but that it and the interest thereon would be a nucleus to attract gifts and bequests until a fund sufficient for the purpose was created. The language of the will is, " * * * to constitute the nucleus of a fund that is to be applied and used for the benefit of said town in establishing and maintaining a hospital, * * * ." The will did not make it the duty of the trustees to obtain other funds. The testatrix anticipated that voluntary contributions would be made, and it may be true, as contended by the defendant, that she intended to require that they should be made so that the hospital should be completed within five years, and to provide that otherwise the bequest should fail. But the more reasonable interpretation of the will is, that the trustees should within that time take such action in establishing a hospital as would assure its final completion for the purpose named, and that the bequest should then take effect. This construction is aided by the fact that the bequest was not available until the death of Julia, nor then, if Julia in her life-time elected to dispose of the property herself, and it is not presumable that Susan assumed that her sister would not continue in life more than five years after her own decease.

If the defendant's construction of the will were adopted, then the fact that Julia survived the testatrix more than five years defeated the bequest, unless the trustees completed a hospital and made it ready for use within that time with funds contributed by other persons in reliance upon the uncertain event of Julia's not disposing of the entire estate. If the testatrix had intended such a conditional bequest we think she would have employed more apt words to express it. It was the testatrix' evident intention to aid in establishing a hospital, not to require one to be completed by other means before her property should be available. It would be inconsistent with her expressed wish that her bequest should be the nucleus, the center, the beginning

of a fund, to construe the will to mean that the bequest should be an addition to such a fund. Her intention was to inaugurate a movement that would result in a hospital, not merely to aid in maintaining one after it was established.

Although the testatrix may have been greatly devoted to the Missionary Association, she gave a hospital the preference in her will. It must be considered that she desired its establishment and the application of her estate to it upon the conditions named. Such a hospital as she desired was provided and opened for the reception of patients about eighteen months after the expiration of five years from her decease. If no decisive steps had been taken within the five years the bequest would have been lost for that purpose.

But the various measures that were taken by the trustees, from the meeting in May, 1891, down to the end of five years from the death of the testatrix—which the court below found were continuous—amounted to an establishing of a hospital within that time. The obtaining a charter, the organization of the "Rutland Hospital" under it, the various meetings, the taking of a deed of the "Pine Hill" land and the work done upon that location, and the receipt of various contributions, all resulted in the purchase, equipment and opening of the Sheldon property as a hospital. These steps taken within five years amounted to the establishing of a hospital according to the intention of the testatrix so far as her intention can be ascertained from the language of the will.

*Judgment affirmed.*