(No. 13293.—Reversed and remanded.)

HENRY C. PEEK et al. Appellees, vs. THE WOMAN'S HOME
MISSIONARY SOCIETY OF THE METHODIST EPISCOPAL
CHURCH et al. Appellants.

*Opinion filed June 16, 1920.*

1. CHARITIES—*what evidence is admissible to explain delay in carrying out condition of devise to charity.* Where a testatrix devises her homestead to a church society on condition that the society establish an orphanage on the premises within three years, in a suit for partition by the heirs after the three years have expired the society should be permitted to introduce any evidence throwing light on the question why it did not come into possession and to show all that it did or attempted to do to comply with the devise within the specified time.

2. WILLS—*devise to a charity should be given a reasonable construction.* A devise to a church society on condition that it establish an orphanage on the premises within three years should be given a reasonable construction, and the devisee should not be charged with negligently allowing the time to expire where it has filed its written acceptance of the devise within one year, as required by the will, where the heirs during the next year carried on litigation to defeat the devise, and where the executor, who is one of the heirs, had possession of the premises through a tenant, who was entitled to six months' notice to quit.

3. PARTITION—*equitable rights will be administered in suit at law for partition.* A petition for partition is a suit at law and should, as far as possible, conform to the procedure which obtains in courts of law, but the statute authorizes the court in such cases to adjust the equities of the parties to the same extent that a court of equity is permitted to do under a like state of facts.

4. RES JUDICATA—*when decree dismissing bill to quiet title does not bar subsequent suit for partition.* A decree dismissing for want of equity a bill to quiet title does not bar a subsequent suit in chancery or an action at law for partition of the same premises, where the former decree was rendered on account of a defect in the bill which went to the jurisdiction of the court.

DUNN and THOMPSON, JJ., dissenting.

APPEAL from the Circuit Court of Ogle county; the
Hon. RALPH E. EATON, Judge, presiding.

PARKER H. HOAG, FREDERICK ULLMANN, WILLIAM C. RIGBY, and ROBERT L. BRACKEN, (URBAN A. LAVERY, of counsel,) for appellants.

J. C. SEYSTER, W. P. FEARER, EDWARD MAHER, and BERNHARDT FRANK, (GROSSBERG & HAFFENBERG, of counsel,) for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This case comes to this court by appeal of the Woman's Home Missionary Society of the Methodist Episcopal Church (hereafter called the appellant) to review a judgment of the circuit court of Ogle county for the partition of certain farm land. The suit for partition was by petition in the nature of a suit at law and not by bill in chancery. The petition was filed by the collateral heirs of Frank F. Peek, deceased, and alleged Martha E. Peek died testate June 17, 1912; that her will and a codicil thereto were admitted to probate; that by the fourth paragraph of her will she devised to the appellant certain real estate occupied by her as a homestead for the purpose of establishing and maintaining an orphanage thereon and for no other purpose; that the will provided in the event of failure or neglect by the appellant to establish such orphanage on the premises within three years after the death of testatrix the devise should become null and void and the property revert, and in that event it or its proceeds were to be divided into two equal parts, one part to be divided among the heirs of testatrix according to the laws of descent, and the other part to be distributed in the same manner to the heirs of testatrix's deceased husband, Frank F. Peek. The will also required the appellant to make known its acceptance of the devise by filing a written acceptance with the executor within one year after admission of the will to probate. This provision was complied with by the appellant filing its ac-

ceptance, but the petition alleged the appellant had failed and neglected to establish an orphanage on the land within three years after the death of the testatrix, by reason whereof the appellant had no title to or interest in the land under the will but the title is vested in the heirs-at-law of the testatrix and the heirs-at-law of her deceased husband in fee simple. The petition prayed for partition of the land and that the claim of appellant be declared invalid and a cloud on the title of said heirs.

Martha E. Peek, the testatrix, executed her will on August 18, 1908. The land involved in this controversy was disposed of by the fourth paragraph of the will, which is as follows:

"*Fourth*—I give and devise to the Woman's Home Missionary Society of the Methodist Episcopal Church, a corporation under the laws of the State of Ohio, the following described real estate, to-wit, [here follows description of the land,] said premises being the place formerly occupied by my husband and myself as a homestead and being known as the old Peek homestead. All of the above described real estate to be held and used by the aforesaid society in the manner following, to-wit: It is my wish, and I hereby direct, that there shall be established and maintained upon said premises by said Woman's Home Missionary Society a home for orphan children or orphanage, to be known as the Peek Orphanage, and I direct that all of the income derived from said land after the payment of the annuities to my sister, Mary E. Savage, and Mellona Peek, hereinbefore mentioned, and after the payment of the necessary expenses of keeping said premises in repair and making necessary improvements, shall be used for the support and maintenance of said orphanage and for no other purpose. In case said society shall not desire to establish said orphanage upon the said premises or shall fail or neglect so to do within three years after my death, or having established said orphanage shall at any time thereafter for

the space of three consecutive years fail to maintain and keep said orphanage in active operation, I direct that this devise to the Woman's Home Missionary Society shall thereupon become null and void and said property shall revert to my estate; and I hereby direct that in that case of such reversion such real estate, or the proceeds thereof, shall be divided into two equal parts, one of said parts to be divided among my heirs according to the laws of distribution of the State of Illinois, and the other part to be divided in the same manner among the heirs of my late husband, Frank F. Peek. And I further direct that in case the said Woman's Home Missionary Society shall wish to accept the devise herein made to them upon the terms therein mentioned, they shall file a written acceptance of said bequest with my executor within one year after the probating of this will, and that if said society shall not file such acceptance within one year, as above provided, they shall be deemed to have rejected said bequest, and thereupon said bequest shall become null and void and said real estate shall be sold by my executor, whom I hereby appoint a trustee for such purpose, and the proceeds of such sale divided between the heirs of myself and my late husband, Frank F. Peek, as above set forth."

On the 16th day of November, 1910, testatrix executed a codicil to the will, revoking the devise to the appellant of a part of the premises described and directing as to all other real estate devised to the appellant the devise should be carried out in all respects as provided in the will, the intention of the codicil being only to withdraw the tract of land described therein from the devise to the appellant.

The heirs of the testatrix were brothers and sisters and descendants of brothers and sisters whose names are Eaton and are referred to in the briefs as the Eaton heirs. The heirs of testatrix's deceased husband were his brothers and sisters and their descendants, and are referred to as the Peek heirs.

The appellant filed four pleas to the petition for partition. In substance the first plea alleged that July 24, 1913, David B. Eaton, one of the heirs of Martha E. Peek, filed a bill in the circuit court of Ogle county wherein he and others were complainants and appellant and the Peek heirs were defendants, in which it was alleged appellant was incapable in law of taking title to the land under the will; that complainants and others, parties to the bill, were the owners of the premises, and prayed a decree to that effect. The plea alleged that suit was not disposed of until June 16, 1914, when the decree of the circuit court sustaining appellant's title and dismissing the bill was affirmed by the Supreme Court, and that thereafter, and prior to March 1, 1916, and as promptly as appellant could do so, it established and has ever since maintained an orphanage on the premises in accordance with the will of Martha E. Peek; that the delay in establishing the orphanage was caused by the litigation referred to and litigation following thereafter, and was further caused by the acts and doings of David B. Eaton and other parties to the suit begun in July, 1913, both before and after the final disposition of said suit. The plea alleged the orphanage was established within the time required by the will, having regard to the time necessarily consumed by the litigation and by the other acts and doings of Eaton and others. The second plea, in substance, was that the decree in a certain suit in chancery in the circuit court brought by the Eatons against appellant was *res judicata.* The third plea alleged that appellant has spent large sums of money and incurred obligations in maintaining the orphanage, all of which was done with the knowledge of appellees, whereby they have been guilty of *laches.* The fourth plea alleged that about June 16, 1914, David B. Eaton, as executor, turned over to appellant possession of the premises; that since that time appellant has expended large sums of money in establishing and maintaining thereon an orphanage, whereby, if it should be adjudged that

appellant is not entitled to the premises, it should have an accounting and reimbursement for its expenditures. The court sustained a demurrer to the first and third pleas and petitioners replied to the second and fourth.

The testatrix died June 17, 1912, and the will was admitted to probate July 31 following. It is not denied appellant filed its acceptance of the devise within the time required by the will. The premises in controversy, consisting of 156 acres of farm land, were occupied by H. D. Rebuck as tenant under a written lease from year to year executed by the testatrix in her lifetime, which required six months' notice to terminate it. The year began March 1 and the rent reserved was five dollars per acre. After the death of the testatrix the lease passed to the possession of David B. Eaton, executor, who is also one of the Eaton heirs. Appellant did not immediately after filing its acceptance of the gift proceed to establish the orphanage. The executor appears to have been in possession and control of the premises and to have collected the rents for the years ending March 1, 1913, and March 1, 1914. While no clear and definite proof was made that the heirs refused to recognize the validity of appellant's title immediately upon the will being admitted to probate, the inference is warranted that they did not recognize appellant's title from the fact the executor remained in possession and control and collected rents from the premises for two years, and the further fact that on July 24, 1913, the Eaton heirs filed their bill in equity to have the devise to appellant declared void on the ground that it was incapable in law to take and hold the property. The circuit court dismissed that bill for want of equity, and that decree was affirmed by this court June 16, 1914, in the case of *Eaton* v. *Home Missionary Society,* 264 Ill. 88. During the pendency of that litigation appellant took no steps to establish the orphanage by the expenditure of any money which was required to fit the premises for such use or by any other acts. Rebuck remained as tenant

in possession of the farm until the last day of February, 1916. He testified that about the 27th day of January, 1914, someone representing appellant talked with him about moving off of the premises. What the conversation was he was not permitted by the court to state. An attorney for appellant called on Rebuck in the fall of 1914 at the farm and had a conversation with him. The appellant offered. to prove the talk was about whether Rebuck would permit appellant to place orphans on the farm in actual operation of it as an orphan asylum, but on objection the court refused to permit the evidence. Appellant did not actually place orphans on the farm and begin the use of the same as an orphans' home until Rebuck vacated it, February 28, 1916. The only written notice given by appellant to the tenant demanding possession was in a registered letter from its attorney, received by the tenant about Thanksgiving day, 1915, and a letter about the same time from Mrs. Rae, who claimed to represent appellant. The letter from the attorney demanded possession on the first day of March, and the tenant agreed to, and did, vacate at that time. Appellant offered to prove by the tenant that other people claiming to represent appellant called on the tenant while he resided on the farm, for the purpose of making arrangements to establish the orphanage, but on objection by the petitioners the court refused to permit the testimony. The tenant paid the rent due March 1, 1915, and March 1, 1916, to appellant with the consent of the Eatons. Very soon after he vacated appellant began using the premises for an orphans' home and placed therein two or three orphans. The number increased from time to time, until at the time of trial there were eleven orphans in the home. As soon as appellant got possession it began making improvements and repairs on the buildings to fit them for an orphans' home and expended several hundred dollars in doing that work. On the day before Rebuck, the tenant, vacated the premises the Eaton heirs filed another bill in the circuit court of Ogle county

alleging appellant had failed to comply with the require-
ments of the will to establish an orphanage within three
years after the testatrix's death; that three years and eight
months had elapsed since that time; that by reason of such
failure the devise to appellant became null and void and a
cloud on the title of complainants, in whom and in the Peek
heirs the title vested upon the failure of appellant to es-
tablish the orphanage within the time required by the will.
The Peek heirs and appellant were made defendants to that
bill, the prayer of which was that the devise to appellant
be declared null and void, canceled and removed as a cloud
upon the complainants' title. This litigation was not finally
ended until January, 1918, when a demurrer was sustained
to the bill by the circuit court and the bill dismissed for
want of equity. During all the time that litigation was
pending appellant was in possession of the premises, im-
proving and repairing them and keeping orphans thereon.
The petition in this case for partition was filed by the Peek
heirs July 8, 1919, and after hearing an order was entered
declaring appellant had failed and neglected to establish an
orphanage on the land within three years after the death of
Martha E. Peek, by reason of which failure the title to the
land vested one-half in the heirs of Martha E. Peek and
one-half in the heirs of her deceased husband, and the
premises were ordered partitioned among said heirs accord-
ing to their respective rights as found and declared.

No orphans were placed on the farm until more than
three years after the death of Martha E. Peek, and the
meritorious question involved is, did appellant by its failure
to establish an orphanage within that time, in view of the
litigation affecting its title, forfeit its right to the premises?
There is no dispute that the premises were not used as an
orphanage within the three years, but it is contended by
appellant that the testatrix did not have in contemplation the
possibility that the heirs, to whom she devised the land in
the event appellant declined to accept the gift or failed to

use it within the time required, would dispute appellant's right to the gift for the purposes for which it was devised and seek by litigation to deprive appellant of the property. A year elapsed after the probate of the will before the suit was begun by the Eaton heirs, July 24, 1913, to have the devise to appellant declared void, but during none of that period did appellant have possession. The land was occupied by a tenant, who recognized David B. Eaton, the executor, as his landlord and to whom he paid the rent. While the direct proof in the record is meager, it seems apparent, when all the facts and circumstances are considered, the heirs questioned appellant's title from the beginning, and this was made clear by the suit begun by the Eaton heirs in 1913 to have the devise to appellant declared void, and by the testimony of Henry C. Peek, who testified that a few days after the will was filed he had a talk with a lady representing or interested in appellant about a compromise. He also testified he and Eaton,—presumably David B. Eaton,—talked with each other about bringing a suit and agreed neither would do anything without informing the other. He also testified they might prior to that time have talked about the advisability of bringing a suit, but his idea was a compromise and not a lawsuit. The Peek heirs were defendants to the bill filed by the Eaton heirs but do not appear to have made any resistance to it. It was dismissed by the circuit court for want of equity, and the decree was affirmed by this court just two years after the death of the testatrix. After that time the executor relinquished control of the farm to appellant, the tenant still remaining in possession. The attorney for appellant called on the tenant at the farm in September, 1914, but the purpose of his visit the tenant was not permitted to state. Appellant offered to prove the attorney sought permission of the tenant to place a certain number of orphans on the farm and put it in actual operation as an orphans' home, but the court sustained objections to the proof being made. We think the

ruling was erroneous. Rebuck was lawfully in possession of the farm under a lease executed by the testatrix in her lifetime, and until his rights were terminated by notice in accordance with the terms of the lease or he voluntarily chose to surrender them, appellant could not enter and appropriate the property for use as an orphans' home. It does not appear from the record whether any representative of appellant had ever seen the lease or that it had any knowledge of what notice was required to terminate it. The tenant testified that the first time he was talked to about moving off the farm was about January 27, 1914. He was subsequently talked to by the attorney for the appellant and by several others during the years 1915 and 1916. The first written notice to vacate he received was on Thanksgiving day, 1915. He vacated the last day of February, 1916.

From all the testimony it appears to us that there was, in the exercise of good judgment by appellant, good reason for not taking the risk of the expenditure of a large amount of money in converting the premises into a home for orphan children while its title was disputed by the heirs. Appellant was at no time enjoined from establishing an orphanage on the farm, but under the circumstances even a society not organized for charitable purposes and with plenty of money and resources could hardly have been expected to risk the expenditure of money in preparing the farm for the use to which the testatrix desired it put, while its right to the property was denied and a considerable part of the time was being litigated. It is true the will made no provision for any such contingency but required the orphanage to be established within three years after testatrix's death, but this provision should receive a reasonable construction. As we have said, it was not in contemplation of the testatrix that the heirs, who are all collateral heirs, would obstruct appellant in carrying out her intention and purpose by denying the title of appellant, talking about attacking it by litigation and actually bringing suit to defeat it until

the three years had expired, and then claim and obtain the property on the ground that appellant had not appropriated the property to use as an orphans' home within three years. The three years allowed by the will in which the orphanage was to be established began to run at the death of Mrs. Peek. The first year after that occurred no litigation was actually commenced by the heirs to defeat the devise, and while the testimony to show a reason for the delay that year was meager, there was testimony that the heirs were denying the validity of the devise to appellant and discussing the proposition of bringing a suit to test it and also of a compromise with appellant. Moreover, the executor, who is one of the Eaton heirs, had possession through the tenant and claimed and collected the rents for that and the following year. Appellant was not by the terms of the will required to do anything the first year after the death of the testatrix except to accept the gift in writing, which it did. Then all of the second year after the death of the testatrix the suit to declare the devise to appellant void was pending. We have above referred briefly to the situation and conditions existing after that litigation ended, until appellant got possession of the farm, March 1, 1916.

The court, in our opinion, erred in sustaining the demurrer to the first plea and refusing to permit proof offered to support it. It was the view of the court, as we understand, and it is the view of the heirs' counsel, that appellant was bound to establish the orphanage on this farm within three years after Mrs. Peek's death or lose the farm, and that the obstructive conduct and attitude of the heirs thrown in the way of its accomplishment could not relieve against the forfeiture of the appellant's title if three years elapsed before the home was established. As we view the record, appellant cannot justly be charged with negligently allowing the time given by the will to expire before establishing the orphanage on the farm. It could not establish it until it came into possession. It never secured possession

until March 1, 1916, and it was competent to show why it had not come into possession and all it had done or attempted to do to comply with the devise within the specified time. The bequest was to a charitable organization for a charitable use, and, as clearly shown by the will and the codicil, it was the primary purpose and intent of the testatrix that the property be devoted to that use. Only in the event of the gift not being accepted by the appellant in writing within a year or in the event of its failing and neglecting for three years to establish the home was the property to go to the collateral heirs of testatrix and her deceased husband. Signifying its acceptance of the gift within a year by appellant was imperative, but the condition as to the three years given for establishing the orphanage should receive a reasonable construction, especially in view of the nature and character of the devise and the devisee, and in determining whether the delay was reasonable and prudent or negligent and unreasonable all evidence throwing light on the question should be admitted and considered. If the heirs seeking to profit by the delay in establishing the orphanage by their own acts and conduct materially contributed to produce the delay, it would seem most unconscionable to allow them to benefit by such acts and conduct. True, this being a petition for partition is a suit at law, and, except as otherwise provided, should, as far as possible, conform to the procedure which obtains in courts of law, but the statute authorizes the court in such cases to adjust the equities of the parties to the same extent that a court of equity might under a like state of facts. "The change in the statute in this respect does not at all affect the character of the court as a court of law when exercising this equitable jurisdiction. Its only effect is to confer additional jurisdiction in a specific class of cases in which courts of equity had previously exercised exclusive jurisdiction. There is nothing in the nature of many equitable rights that requires them to be administered exclusively in

courts of equity. They might be administered just as well in a court of law if the law so provided." (*Hopkins* v. *Medley,* 97 Ill. 402.) That was a suit by petition for partition, and the judgment of the circuit court was reversed and the cause remanded. It came to this court a second time and is reported in 99 Ill. 509, where the court said: "It is true, as claimed, the statute expressly recognizes the distinction between partitions at law and in equity, yet it does not therefore follow that the rights of the parties may not be as fully enforced in the one proceeding as the other. The primary rights of the parties are the same in either case and may be enforced as effectually in one forum as the other. The only difference between the two relates to the procedure."

If the views we have expressed are correct the judgment must be reversed for the errors in sustaining the demurrer to the first plea and sustaining objections to testimony offered by appellant, and we do not deem it necessary or important to discuss other assignments of error, except as to the defense of *res judicata* set up in appellant's second plea, on which issue was joined. The adjudication relied on by the plea was the decree of the circuit court of Ogle county sustaining a demurrer to and dismissing a bill in equity filed by the Eaton heirs February 28, 1916, to which the appellant and the Peek heirs were made defendants. This was a bill to quiet title to the land in controversy. The bill was based on the claim that appellant's title had failed because it had not established the orphanage within three years and the land belonged to the Peek and Eaton heirs. The bill did not allege complainants were in possession of the land or that it was vacant and unoccupied. Demurrers to the bill were sustained and it was dismissed without a hearing for want of equity. It seems apparent from the record that the decree was on account of a defective pleading. The defect in the bill went to the jurisdiction of the court, and the decree dismissing it was not a bar to another

suit in chancery or an action at law. *Godschalck* v. *Weber,* 247 Ill. 269; *People* v. *Harrison,* 253 id. 625; *Gage* v. *Ewing,* 114 id. 15.

We do not think the proof sustained the plea of *res judicata,* but for the reasons stated the judgment is reversed and the cause remanded for further proceedings in harmony with the views expressed in this opinion.

*Reversed and remanded.*

DUNN and THOMPSON, JJ., dissenting.

---

(No. 13253.—Judgment affirmed.)
THE SPARKS MILLING COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(CORA J. MAY, Exrx. Defendant in Error.)

*Opinion filed June 16, 1920.*

1. WORKMEN'S COMPENSATION—*when death is presumed to have been accidental.* Where there is no direct evidence as to what caused the death of an employee and the circumstances are such that the death must have been by suicide, murder or by accident, in the absence of any evidence of suicide or murder it must be presumed that the death was accidental.