# THE ATTORNEY GENERAL

## *v.*

## THE ILLINOIS AGRICULTURAL COLLEGE *et al.*

1. TRUSTS—*equity jurisdiction to carry out the purpose of the trust.* Where property and funds are given by the State to a corporation, in trust, to carry out a certain object, a court of equity, having jurisdiction of trusts and trust property, may, in case of its waste or perversion, or on account of the inability or indisposition of the trustee to execute the trust, seize the prop-

erty or fund, and place it in the hands of a trustee who will execute the trust.

2. A court of equity has the power, and will, in a proper case, pursue a trust fund and restore it to its original purpose, into whosesoever hands it may come, unless held by innocent purchasers without notice. If disposed of, and the proceeds reinvested in other property, the trust will attach to the latter.

3. Where it was shown, on a bill filed by the Attorney General on behalf of the State, that the Illinois Agricultural College had wasted and squandered the property donated to it by the State for the purpose of maintaining an agricultural college, and that the directors had shown themselves either unable or unwilling to discharge the trusts assumed, it was *held*, error to dismiss the bill seeking to take the property from the directors and to enforce the trust.

4. ILLINOIS AGRICULTURAL COLLEGE—*statute relating to, construed.* The amendment to the charter of the Illinois Agricultural College, of February 12, 1867, providing that the directors shall be permitted to impart instruction in all the branches taught in similar institutions in any of the States, does not release them from the duty imposed in their charter of imparting knowledge of practical agriculture and the mechanic arts. It may enlarge their powers, but does not diminish them.

5. COSTS—*against the State.* It is error to decree that the State shall pay the costs of a suit brought in its behalf, and it is equally so to decree costs against the Attorney General, in a suit brought in his official capacity on behalf of the State.

WRIT OF ERROR to the Circuit Court of Washington county; the Hon. AMOS WATTS, Judge, presiding.

Mr. JAMES K. EDSALL, Attorney General, *pro se.*

Mr. JUSTICE WALKER delivered the opinion of the Court:

An act of the General Assembly, adopted on the 21st of February, 1861, incorporated the Illinois Agricultural College "for the purpose of instruction in practical and scientific agriculture, and in the mechanic arts." The capital stock of the corporation was fixed at $50,000, with liberty to increase it to $100,000, to be divided into shares of $100 each. The capital stock was, by the charter, required to be exclusively devoted to the purposes for which it was incorporated. It

provided, the stock, property and concerns of the company should be managed by the directors.

The charter further required that, in employing teachers to impart instruction in practical agriculture and the mechanic arts to the pupils attending the institution, it should be the duty of the directors to give the pupils an opportunity and to require of them to labor in the field, in the workship or in the laboratory, one-half of the time, from the 1st of March to the 1st of December, to the end that all pupils might learn the art of productive industry as well as mental improvement; that the institution should annually receive one student from each county in the State, free of charge for tuition, to be instructed in the science and practice of scientific agriculture and the mechanic arts.

For the purpose of enabling the college to perform this duty, by the 8th section of the charter, the State gave to the corporation the college and seminary lands of the State, and the evidence shows that these were subsequently sold by the college for $58,000.

The company opened subscription books, stock was taken, the incorporation organized by the election of officers, and a farm purchased near Irvington, in Washington county. Buildings were erected at a cost, including the lands, of $30,000, teachers were employed, and the school opened in 1866. But it was, in its character, no more than a common school. The directors provided no means for teaching scientific agriculture, and erected no workshops or provided any facilities for teaching the mechanic arts. On the contrary, the whole effort seems to have been a miserable failure.

The directors appointed A. D. Hay treasurer, and authorized him and the secretary to sell the lands, which they did. The buildings were erected, and the money was advanced therefor by Hay, to be paid from the money for which the land donated by the State was sold, when collected. It was collected by Hay, and he reimbursed himself, used the balance and failed financially, and, as the directors took no bond from him, the money was lost, and the directors borrowed money of Sawyer,

McCracken & Co. to meet expenses of the school, and gave a deed of trust on the property to secure its payment, which has never been paid.

These facts, as shown by the evidence in the case, seem most clearly to establish a waste and perversion of the fund donated by the State. That fund had been granted to the State by Congress for the purpose of maintaining a college or seminary of the character created by this charter, and there would seem to be no doubt that the General Assembly intended, when they donated it, that it should be held as a sacred trust fund for the establishment, improvement and carrying on a college of the character they were incorporating. It, manifestly, was not to maintain a common school for that particular neighborhood. It was intended to be an institution for the benefit of young men throughout the entire State, and they so provided by the charter; but the trust was violated, the fund perverted or squandered, and the purpose of the General Assembly defeated, and the benefits intended to be conferred by a judicious use of the trust fund were lost.

The corporation, however, claim that, by the amendment of their charter by act of February 12, 1867, (Private Laws, p. 2, sec. 4,) they were released from the duty of imparting knowledge of practical agriculture and the mechanic acts. That section provides, that they shall be permitted to impart instruction in all the branches taught in similar institutions in any of the States of the Union, or contemplated by the act of Congress donating lands to the several States, to establish agricultural colleges. We fail to perceive how this in anywise releases the college from any duty imposed by the charter. It may enlarge their powers, but surely does not diminish them. That enactment does not purport to, nor does it, release the corporation from any duty imposed.

The corporation having accepted of the donation and their charter, it was with the implied agreement that they would perform, in good faith, the duties imposed by the charter. One of the duties imposed was, that they would hold the lands donated, or the proceeds of their sale, for the "purpose of

establishing, improving and carrying on said college and farm."
This was the trust created, but it has been abused, the fund
misappropriated and wasted, and the institution is shown to
have become incapable of executing the trust, in the future,
in accordance with the terms of the charter. This being true,
and a court of equity having jurisdiction of trusts and trust
property, it may, in case of waste, perversion, or inability or
indisposition of the trustee to execute the trust, seize the
property or fund, and place it in the hands of a trustee who
will execute the trust.

In this case, the land was granted by the general government
to the State, in trust for agricultural and educational purposes—
not for common school purposes, but as a college and seminary
fund for education of a higher character, and to that end it was
entrusted to this corporation; and when the fund was put in
the land and buildings of the college, it did not lose its char-
acter of trust funds. It still retained that character, although
perverted to the use of a district school, using the buildings
for that purpose, and renting the lands and appropriating the
rents to the same purpose. A court of equity has the power,
and will, in a proper case, pursue a trust fund and restore it
to its original purpose, into whosesoever hands it may come,
unless held by innocent purchasers without notice. See *Henry
County* v. *Winnebago Drainage Co.* 52 Ill. 455. In that
case, the fund was conveyed by the county on the considera-
tion that the company would drain the lands for which they
had been transferred by the State to the county; and it was
held that the company took the lands burdened with the trust,
and that a court of equity would enforce its execution, and, as
the corporation had shown itself incapable of executing the
trust, the lands would be restored to the county, which had
previously held the land in trust, in order that it might carry
out the trust upon which they received the lands from the
State. In that case it was said: "But being a trust fund
which remains unappropriated and the trust unexecuted, a
court of chancery will so far take it in charge as to prevent it
from being wasted or misapplied, and will restore it to the

former trustees, to be by them applied to the execution of the trust." So, in this case, the property being stamped with the character of a trust fund, when sold the same character inhered to the money, and when paid for the farm and buildings, it attached and inhered to the farm and structures; and they being trust property, purchased with trust funds donated by the State, which held them for the purposes of the trust, and the corporation having shown themselves incapable or unwilling to execute the trust, the lands, buildings and property should be restored to the State, that it may use them for the purposes of the trust.

The court below, therefore, erred in refusing the relief prayed and in dismissing the bill. There was, also, most manifest error in rendering a decree for costs, as the State is never liable to be decreed to pay costs; and if the decree is intended to apply to the Attorney General, it is equally erroneous, as he only acted in his official character and on behalf of the State, and in the discharge of an official duty.

The other defenses set up in the answer of defendants in error, and not discussed, we regard as wholly unimportant, and do not require to be noticed.

The decree is reversed and the cause remanded.

*Decree reversed.*