THE PEOPLE *ex rel.* George J. Smith, Appellant, *vs.* D. L. BRAUCHER *et al.* Appellees.

*Opinion filed April 19, 1913—Rehearing denied June 5, 1913.*

1. CHARITIES—*equity has jurisdiction to prevent a misuse or abuse of a charitable trust.* A court of equity has jurisdiction to prevent a misuse or abuse of a charitable trust, and the Attorney General or State's attorney, representing the public, is charged with the duty of preventing a breach of a trust for public charity or of restoring the trust fund after it has been diverted.

2. SAME—*gift for the promotion of public worship is a public charity.* A gift for the support of churches, or to pay the expense of teaching or preaching religious doctrines, or for the promotion of public worship generally, is a gift to charity.

3. SAME—*members of incorporated religious society need not be made parties to bill.* Where a religious society is incorporated the title to the church property is in the corporation, and neither the trustees nor the members have any beneficial ownership or personal or private interest in the property, and the members need not be made parties to a bill brought by the State's attorney to set aside a sale of the property held by the corporation.

4. SAME—*when rule that property reverts to donor upon dissolution of charitable corporation does not apply.* Upon the dissolution of a charitable corporation the title to the property reverts to the original donor or his heirs; but this rule has no application where the property was not donated to the society but was purchased with donations of money from individuals.

5. SAME—*when a court of equity may execute a trust cy pres.* In case of a charitable trust, if the plan of the donors cannot be carried out as made but can be carried out in substance, a court of equity may execute the trust *cy pres;* but this power does not authorize the application of the trust fund to a purpose not corresponding closely to the intention of the donors.

6. SAME—*when equity cannot grant relief against the sale of church property.* Where property belonging to an independent religious corporation has for many years been devoted to secular uses and the purpose of the corporation has been abandoned, and all living members of the corporation have authorized a sale of the property and a distribution of the proceeds, there being no other religious corporation of the same character in the community, a court of equity is without power to set aside the sale at the suit of the State's attorney, acting for the public, and to apply the proceeds of the sale to some other charitable use.

7. SAME—*what should be alleged in the bill to execute a trust cy pres.* Where a complainant alleges that a trustee has abandoned the execution of a charitable trust and asks a court of equity to provide for its execution *cy pres,* the bill should also allege the existence of some society, corporation or agency through which it can be done or propose some plan which will substantially effectuate the intent of the donors.

APPEAL from the Circuit Court of Logan county; the Hon. T. M. HARRIS, Judge, presiding.

KERR & KERR, for appellant.

HUMPHREY & ANDERSON, and KING & MILLER, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

George J. Smith, special State's attorney of Logan county, filed the bill in this case in the circuit court of said county in the name of the People, asking the court to set aside a sale of real estate alleged to have been held as a charitable trust by the First Universalist Society of Lincoln, to George D. Corwine, Jr., or if the sale should be held valid the trustees should be required to account for the proceeds, and if it was found impracticable to longer continue the trust under the control of the said society, a scheme should be devised to execute it *cy pres.* The society and its trustees and the parties claiming title under the sale were made defendants. The bill was answered and the

issues were referred to a special master in chancery, who took the evidence and reported his conclusions that the First Universalist Society of Lincoln was an independent corporation not affiliated with the general Universalist organization or Universalist church, and that there was no evidence as to how the money with which the property was purchased was accumulated. His legal conclusions were that the proceeds of the sale were not impressed with any trust and the People of the State of Illinois had no interest in them. The court heard the cause on exceptions to the report, overruled the exceptions and made findings that the sale was ordered at a regular meeting of the members of the society; that the People had no interest which would entitle them to prosecute the suit, and that the members of the society who were not parties were necessary parties to the suit. The bill was dismissed and an appeal taken.

The First Universalist Society of Lincoln was formed as early as the year 1867. The society adopted a constitution, which stated its objects and the basis of the religious faith of its members, and provided that any person, by assenting to the confession of faith, might be elected to membership by a majority of votes at any meeting of the society or of the board of trustees. Four lots in the city of Lincoln were purchased for $800, which was raised by donations. A church building was erected on the lots with funds raised in the same manner and was dedicated on September 11, 1867. A parsonage for the residence of the minister was also erected on the property in 1873, and on May 1 of that year the lots were conveyed to the trustees of the First Universalist Society of Lincoln. On April 16, 1883, trustees were elected and a certificate of incorporation was filed for record on April 23, 1883, so that the society then became incorporated under the statute. On August 1, 1887, the property had practically ceased to be used for the purposes of the society and the church was then rented for a business college, with a reservation in the lease that re-

ligious services might be held in the church. The parson-age was afterward rented for a residence. Since 1887 the property has been occupied for secular purposes and has not been devoted to the uses for which it was acquired or for which the church and parsonage were built. It was never assessed for taxes until 1895, when it was put on the tax list and the trustees paid taxes until 1898, when religious services were held in the building one Sunday evening. The representation was then made by the trustees to the board of review that the property was church property and the board of review struck it from the tax list, after which it was not assessed nor taxed. On May 10, 1906, the trustees voted to sell the property for $12,000. On October 2, 1906, the price was reduced to $8000. There was some question about the conveyance to the trustees, and the legal title was quieted by a decree in the circuit court in 1907, in pursuance of a bill filed by the trustees against the heirs of the grantors. By that decree the court found that the trustees held the legal title in trust for the use and benefit of the First Universalist Society of Lincoln, a religious corporation. On April 3, 1909, George D. Corwine, Jr., made a proposition to buy the property for $7000. A meeting was held on May 29, 1909, at which six persons were present, and thirteen others, living in ten different States, from Massachusetts to California, were represented by proxies. Those who were present or represented were the only living persons who had formerly been members of the decadent society. A resolution was adopted authorizing the sale of the property and a division of the proceeds equally among the nineteen persons. There had been practically no use of the property for the uses of the society or for religious purposes for more than twenty years, during which it had been rented, and what became of the rents does not appear.

By the decree the court found that the People of the State of Illinois were not entitled to prosecute the suit and

that all the members of the society were necessary parties. We are unable to concur in these findings. Courts of equity have jurisdiction to prevent a misuse or an abuse of charitable trusts, (*Happy* v. *Morton,* 33 Ill. 398,) and a gift for the support of churches or to pay the expense of teaching or preaching religious doctrines is a gift for a charitable use. It is universal that the public are not only admitted and churches are open to everybody, but all are invited and urged to attend. A gift for the promotion of public worship is therefore a public charity. (*Andrews* v. *Andrews,* 110 Ill. 223; *Alden* v. *St. Peter's Parish,* 158 id. 631; *Hoeffer* v. *Clogan,* 171 id. 462.) The Attorney General or a State's attorney representing the public is charged with the duty of preventing a breach of a trust for a public charity or to restore a trust fund after it has been diverted. (*Attorney General* v. *Illinois Agricultural College,* 85 Ill. 516; *Hunt* v. *Fowler,* 121 id. 269; *Attorney General* v. *Newberry Library,* 150 id. 229.) The earlier decisions of the Supreme Court of Massachusetts relied upon by appellees as holding that this was not a public charity were overruled in *Osgood* v. *Rogers,* 186 Mass. 238, *Sears* v. *Attorney General,* 193 id. 551, and *Chase* v. *Dickey,* 99 N. E. Rep. 410. The special State's attorney had a right to file the bill.

When the members of an unincorporated religious society organize as a corporation under the general law, the rights and interests of the individual members in the property are thereby transferred to the corporation. The title to church property is in the corporation, and neither the trustees nor members have any beneficial ownership or personal or private interest in the property. (*Happy* v. *Morton, supra; Adams* v. *First M. E. Church,* 251 Ill. 268.) The First Universalist Society of Lincoln being a corporation, it was not necessary to make the members parties.

The purposes declared by the constitution of the First Universalist Society of Lincoln, and the use of the prop-

erty for such purposes, had long been abandoned when the sale was made, and it is impossible to apply the property to the specific uses so declared and for which the church and parsonage were built. If the property could still be devoted to such uses a court of equity would interfere, at the suit of a minority of the members, to prevent a perversion of the trust and to apply the property to its uses; but that cannot be done, and every living person who was a member has joined in disposing of the property. The law is, that upon the dissolution of a charitable corporation the title to its property reverts to the original donor or his heirs; (*Mott* v. *Danville Seminary,* 129 Ill. 403;) but here the property was not given to the society but was purchased with donations of money from individuals. In *Miller* v. *Riddle,* 227 Ill. 53, where religious services had been abandoned for about fifteen years and all meetings of the society had ceased, it was held that the society might be regarded as dissolved and the trust fund reverted to the heirs of the donor, although there were still in the vicinity eight women and three men who had been members of the church. However, we need not consider any question concerning the right to the proceeds of the sale unless they can be lawfully devoted to some public charity other than that represented by the First Universalist Society, which has abandoned the trust.

In the case of a charitable trust, if the plan of the donors cannot be carried out as made but can be carried out in substance, a court of equity will execute the trust *cy pres.* The *cy pres* doctrine is illustrated by the case of *Mason* v. *Bloomington Library Ass'n,* 237 Ill. 442, where a new association could be substituted for the purpose of carrying the trust into execution, and in other similar cases. The doctrine is, that it is immaterial that the intention of the donor cannot be carried into exact execution if it can be done substantially according to the original intention. While that is the rule, we do not have nor exercise the prerogative

powers exercised by the courts in the early English cases, where the courts selected uses not corresponding with the intention of the donor nor carrying out his intention. In this case it does not appear, by the bill or otherwise, that there is any object so nearly answering the general purpose of the donors to the purchase of the lots and the erection of the church and parsonage for the promotion of the particular tenets and principles stated in the constitution of the society as would enable us to apply the fund under the *cy pres* doctrine. No other church organization or religious society or charity is suggested as adopting the same principles or religious beliefs as this independent Universalist society. When a complainant alleges that a trustee has abandoned the execution of a charitable trust and asks a court to provide for its execution *cy pres,* the bill ought also to allege the existence of some society, corporation or agency through which it can be done or propose some plan which will substantially effectuate the intent of the donors. That was not done in this case. An application of the fund to any other charitable use than a religious one would not be in accordance with the intentions of those who made donations to the society, so that application of the fund would necessarily be limited to some public religious charity. To give the fund to some religious organization or church inculcating religious beliefs differing from those of the Universalist society would not be carrying out the intentions of the donors, and as there appears to be no feasible method of applying the fund to a public charity in accordance with the intention of those who contributed to it, the court was powerless to grant relief.

The decree is affirmed.

*Decree affirmed.*