Oscar E. Carlstrom, Attorney General of the State of Illinois, Appellant, v. Charles C. Frackelton et al., Appellees.

Gen. No. 8,498.

Opinion
filed April 14, 1931.

OSCAR E. CARLSTROM, Attorney General, G. E. NEL-
SON, ROYCE A. KIDDER and S. S. DU HAMEL, Assistant
Attorneys General, for appellant.

JOHN M. SMOOT, THOMAS W. HOOPES and ARTHUR W.
LILLIENSTEIN, for appellees.

MR. PRESIDING JUSTICE SHURTLEFF delivered the
opinion of the court.

This is an action instituted by Oscar E. Carlstrom
as attorney general of Illinois, to enforce a charitable
trust created for the benefit of the general public under
and by virtue of the provisions of the last will and tes-
tament of Mary F. Dixon, deceased, late of Menard
county, Illinois.

Mary F. Dixon, a resident of Menard county,
Illinois, departed this life on May 19, A. D. 1924,
leaving no husband, no child or children or descend-
ants of a child or children surviving, but leaving a
brother, Henry H. Colby, and J. Colby Beekman and
Lucy Robertson, children of a deceased sister, Sarah
Beekman, also Lydia Colby, William D. Colby, Alice
Colby Ramsey, children of William Colby and William
D. Colby, children of Alfred Colby, deceased, who was
a son of William D. Colby, deceased; also William
Colby Rucker, a son of Mary L. Rucker, a deceased
sister, as her only heirs at law.

The said Mary F. Dixon left a last will and testa-
ment duly admitted to probate, in which she stated that

it was her purpose to build a memorial bridge to span the Sangamon river at a point near what is commonly known as the Old Salem Chautauqua Park in Menard county, Illinois, in her lifetime, for the benefit of the general public, and in the accomplishment of which purpose it was her intention to expend $30,000 for the building and construction of said bridge. She then provided in said will that if, at the time of her death, said bridge shall not have been fully completed and said sum of money fully expended, that the administrator of her estate should pay over to the trustees named in said will, sufficient money, notes, stocks, bonds or other securities of the value to be estimated by such administrator, sufficient to make, with the moneys already expended, the sum of $30,000, and that the property so set aside be given and bequeathed to the trustees named in said will for such specified purpose, fully authorizing and directing the administrator of her estate to pay over to the trustees named said moneys, notes, stocks and bonds sufficient to make the sum of $30,000.

Said testatrix then provided in said will that if, at the time of her death, the building of said memorial bridge shall not have been commenced, or any part of said sum of money expended, that she thereby gave and bequeathed to Charles C. Frackelton, Harry Schirding and Edward H. Golden, defendants herein, in trust, the sum of $30,000 to be used and expended by them for the purpose of building and constructing said memorial bridge, the design of said bridge and its erection to be under the control of said trustees. It was then provided in said will that the foregoing gift and bequest was made upon the express condition that within five years from the date of her death the board of county commissioners of Menard county, Illinois, or other proper authorities, shall enter into an agreement in writing with said trustees to build and con-

struct suitable approaches at either end of said bridge, and shall cause to be laid out and to be opened up a public highway commencing at some convenient point on the public highway commonly known as the "Lincoln Trail," running south from the City of Petersburg, Illinois, and extending in an easterly direction across said proposed bridge, and connecting with the public highway east of said Chautauqua Park, said approaches to said bridge and said public highway to be laid out and opened up without cost to said trust fund. It was further provided that in the event the board of county commissioners of said Menard county, or other proper authorities, refused to enter into an agreement in writing with said trustees for the building of the necessary approaches to said bridge, and to cause to be laid out and opened up said public road, within said time, and without cost to the trust fund, then the entire gift, together with the accumulated increase thereon, shall, upon the expiration of said five years from the date of her death, revert to and become a part of her residuary estate, and be conveyed and transferred and delivered by her said trustees to the administrator of her estate with her will annexed. It was further provided by her said will that whenever for any cause, whether by death, resignation or otherwise, the number of trustees therein constituted shall be less than three, that the remaining trustees should appoint a new trustee or trustees, in order to keep the number at three, and authorized said trustees to execute whatever instruments might be necessary in order to vest the trust estate in the new trustee or trustees, jointly with remaining one or ones. Said will contained a residuary clause by which the residue and remainder of her estate, both real and personal, which had not been specifically devised and bequeathed, be distributed to her heirs according to the laws of descent of Illinois.

The Old Salem Chautauqua Park referred to in said will is located on the east bank of the Sangamon river, southeast of Petersburg, Illinois. It consists of 52 acres of thickly wooded, partly natural timber, and the remaining area, except the athletic park, is covered with a hard maple grove. There are about 100 summer cottages in said park, part of them owned privately and others owned by the association and rented during the summer season. There are several public buildings, including a summer hotel and large auditorium. There is an artificial lake in this park which affords swimming, boating and fishing privileges. This park offers to the public rare educational and recreational advantages of which thousands of people avail themselves each year. Mrs. Dixon owned one of the cottages at the time of her death and as the provisions of her will evidence, she had a very great interest in the future welfare of Old Salem Chautauqua Park. Across the Sangamon river southwesterly from the Old Salem Chautauqua Park about one-half mile distant on the highway south of Petersburg (State bond issue Route Number 123), referred to in said will as the ''Lincoln Trail,'' is the Old Salem State Park and the main entrance thereto. It is not uncommon for this park to have several hundred visitors a day viewing the Lincoln memorial. It is now necessary for the general public coming from the south on the Lincoln Trail or State Road 123 and visiting the State Park, and desiring to visit the Old Salem Chautauqua Park, to travel northerly to and through a large portion of the City of Petersburg, thence easterly across the river on the State bridge, thence southeasterly and finally westerly to the Chautauqua Park, a distance of about five or six miles, whereas, if the public highway provided for in said will were opened up for public travel, and the said memorial bridge across the Sangamon river con-

structed, it would be necessary to travel a distance only of about one mile.

Upon the last will and testament of Mary F. Dixon being admitted to probate, Henry H. Colby, brother of decedent, was appointed administrator with the will annexed. He continued to act in said capacity until December 23, 1926, when he departed this life. Upon his death J. Colby Beekman, appellee herein, a nephew of the decedent, was appointed by the county court of Menard county as administrator *de bonis non*, with the will annexed, and still holds that position.

It is an uncontroverted fact that Charles C. Frackelton, Harry Schirding and Edward H. Golden, the trustees named in said will, to whom the testatrix bequeathed the sum of $30,000 for the building of said memorial bridge, have never received from said administrator with will annexed, or from said administrator *de bonis non*, with will annexed, said $30,000; that they or any of them never made a demand for it, or any part thereof; nor did they ever have a meeting to consider ways and means for carrying out said public trust.

It further appears that Harry Schirding, trustee, was openly opposed to the carrying out of the provisions of said trust, and because of his said opposition resigned as such trustee on the 14th day of October, 1927.

Although the will provided that there should at all times be three trustees, and that because of resignation or removal for any cause the number of the trustees was less than three, the remaining trustee or trustees should appoint a trustee or trustees to fill the vacancy, there has never been a trustee appointed to fill the vacancy occasioned by the resignation of Harry Schirding.

It appears that Edward H. Golden, trustee, was attorney for Henry H. Colby, administrator with will annexed, and now is acting as attorney for J. Colby

Beekman, administrator *de bonis non,* with will annexed, both of which administrators have failed to turn over to said trustees the $30,000 trust fund, the accrued interest, or any part thereof. Said J. Colby Beekman is a residuary legatee and appellee herein.

The five-year period mentioned in said last will and testament of Mary F. Dixon, deceased, and referred to above, expired on May 19, 1929. This bill was filed by the attorney general to the February term, 1929, of the circuit court of Menard county, making the remaining trustees and the residuary legatees, the heirs at law of decedent, parties defendant.

The theory and purpose of this proceeding, as disclosed by the bill of complaint, is that the said bequest to the trustees named in the will with the duties assigned to them, created an active trust; that in view of the facts as stated, Harry Schirding, trustee, having resigned, Edward H. Golden, trustee, having rendered himself incompetent because of representing interests adverse to the carrying out of said trust, and Charles C. Frackelton, impotent to discharge the trust alone, and in fact all of said persons designated as trustees in said will, having virtually never accepted the trust imposed upon them at any time, that Charles C. Frackelton and Edward H. Golden remaining nominally as trustees, never having formally resigned, should be removed and new trustees appointed, to whom the trust fund should be delivered by the administrator *de bonis non* with will annexed, and the time for accomplishing the purposes of said trust be extended.

It appears that subsequent to the filing of said bill of complaint, to wit, on May 5, 1929, about 14 days before said five-year period should elapse, Edward H. Golden, who was nominated as one of said trustees and who is now attorney for J. Colby Beekman, administrator *de bonis non,* with will annexed, appeared

before the county commissioners of Menard county with a written statement signed by himself and Charles Frackelton, trustee, calling the attention of said board to the provisions of the will of Mary F. Dixon, deceased, and requesting that they enter into a contract in writing in conformity with the provisions of said will for the building of said memorial bridge, opening up a public highway and building approaches to said bridge without cost to the trust fund, as provided in said will, and that said county board did, upon that occasion, in a memorandum in writing, refuse to accept the provisions of said will. A decree was entered finding that the equities of the cause were with the defendants and dismissing said bill for want of equity.

Appellant has brought the record to this court by appeal for review.

Appellant contends in this case that the condition contained in the will is a condition subsequent and that the estate vested in the trustees, while appellees insist that the condition is a condition precedent and never became vested. The bequest for the building of the bridge is a public charity and such bequests are not confined to mere almsgiving or to the relief of poverty and distress, but have a wider signification, and embrace the improvement and promotion of the happiness of man, and a charitable use, where neither law nor public policy forbids, may be applied to almost anything that tends to promote the well-doing and well-being of man socially. Therefore, a public improvement for the benefit of the general public is a charitable trust such as equity will enforce. (*People v. Walters Chapter, D. A. R.,* 311 Ill. 304; *Stowell v. Prentiss,* 323 Ill. 309; *Congregational Sunday School and Publishing Society v. Board of Review,* 290 Ill. 180.) And there can be no doubt but that the attorney general of the State, representing the public, is charged with the duty of preventing a breach of a trust for a

public charity or of requiring a restoration of a trust fund which has been diverted and not delivered to the trustees of such fund. (*McGee v. Vandeventer*, 326 Ill. 425, 441; *People v. Braucher*, 258 Ill. 604; *Attorney General v. Illinois Agricultural College*, 85 Ill. 516; *Hunt v. Fowler*, 121 Ill. 269; *Attorney General v. Newberry Library*, 150 Ill. 229.)

Appellee, to support the doctrine that the condition in the will of testatrix is precedent, cites *Maguire v. City of Macomb*, 293 Ill. 441, and *Richards v. Richards*, 303 Ill. 306. In *Maguire v. City of Macomb, supra,* the court held: "In every instance a condition is to be considered precedent or subsequent, according to the clear intention of the maker to be collected from the whole instrument, and technical words, if any are used, yield to intention. If the language of the whole will shows that the act on which the estate depends must be performed before the estate can vest, the conditions are precedent."

In *Richards v. Richards, supra,* the court held: "The first thing to consider in the construction of this will is the intention of the testator as expressed in the language used by him, and having determined this intention it should be given effect. (*Munie v. Gruenewald*, 289 Ill. 468.) The language used by Frederick Richards is plain and unambiguous and there is no need for construction. He names the conditions necessary to be performed by his son Charles in order to vest the son with the fee to the lands described, and then provides that if the son does not obtain the fee 'in the manner provided,' then the fee shall vest in the son's children."

In the *Maguire* case the condition was that the city should accept the gift and within a reasonable time enter into the possession of the lands to be used as a park. In the *Richards* case the court states: "The language used by Frederick Richards is plain and

unambiguous and there is no need for construction. He names the conditions necessary to be performed by his son Charles in order to vest the son with the fee to the lands described, and then provides that if the son does not obtain the fee 'in the manner provided,' then the fee shall vest in the son's children. If two or more things are to be done before an estate vests, both or all must be done, otherwise the conditions will not be performed.''

In the case at bar the language of the testatrix expresses a different idea entirely. The trustees could never enter into any contract with a public authority to construct a bridge, unless the trustees were vested with the title to the funds out of which the contract price could be paid, and the express provision of the will is, that in case such a contract is not entered into within five years, the said fund ''shall revert to and became a part of my residuary estate, and be conveyed, transferred and delivered by said trustees to the administrator of my estate.'' The will is meaningless unless the trustees are vested with the title to the funds. In the *Maguire* case and the *Richards* case the subject of the trust was real estate, and the nature of the condition did not require the title to the lands to pass to the devisees in either case until the conditions had been fulfilled. In the case at bar the subject of the trust was personalty, which the testatrix devoted to an active, charitable trust and the trust could only become active by vesting the trustees with the title to the funds. The language of the will is: ''and the property so set aside I give and bequeath for said purpose to the trustees hereinafter named.'' The condition follows in a later and disconnected clause. In the *Maguire* case and in the *Richards* case in the language of the will the testator was dealing directly with the beneficiary. In the case at bar the testatrix, in the language of the will, was dealing with the general public through the intermediary of trustees, which required affirmative action

on their part. Where trustees are required to hold the legal title to property in order to perform certain duties set forth in the instrument creating the trust, the trust is active and not executed by section three of the Conveyance Act, Cahill's St. ch. 30, ¶ 3, which reenacted the substance of the statute of uses. (*Kathman v. Sheehan,* 332 Ill. 280; *Emery v. Emery,* 325 Ill. 212.)

The Supreme Court in the case of *Corson v. Thornburn,* 323 Ill. 338, very clearly distinguished these two estates and illustrated the difference in the language employed in creating them by will. On page 341 of the opinion in this case the court said:

"Whether a remainder is vested or contingent depends on the language employed. If the conditional element is incorporated into the description of or into the gift to the remainderman then the remainder is contingent; but if, after words giving a vested interest, a clause is added divesting it, the remainder is vested. (*Lachenmeyer v. Gehlbach,* 266 Ill. 11; *Smith v. Chester,* 272 id. 428; Gray's Rule Against Perpetuities, sec. 108; Kales on Estates and Future Interests,—2d ed.—sec. 345.) Thus, in the case of a devise to A for life, remainder to his children, with provision that if any child die in the lifetime of A the share of such child shall go to those who survive, the share of each child is vested, subject to be divested by its death; but in the case of a devise to A for life, remainder to such of his children as survive him, the remainder is contingent. Under this rule it is clear that the estate created by the fourth clause of the will of testatrix is a vested remainder. The same conclusion is reached by applying another familiar rule, namely, where the enjoyment of the estate or the period of distribution is postponed for the convenience of the estate and not for reasons personal to the devisees the remainder is vested. *Northern Trust Co. v. Wheaton,* 249 Ill. 606; *Thomas v. Thomas,* 247 id. 543."

The testatrix in this case more fully expressed her bequest as follows: ''If at the time of my death, the building of said bridge shall not have been commenced or any part of said sum of money expended, I hereby give and bequeath to Charles C. Frackelton, Harry Schirding and Edward H. Golden, all of whom reside in Petersburg, Illinois, in trust, the sum of $30,000, to be used and expended by them for the purpose of building and constructing said memorial bridge. The design of said bridge and its erection to be under the control of said trustees.'' This provision, as quoted, bequeathed the sum of $30,000 to the trustees named therein and defined the purpose for which the money should be expended and the duties which devolved upon the trustees. This paragraph stands alone and is complete. There is no condition whatsoever imposed in it in making the gift. It is the opinion of the court in this case that the condition inserted in a later clause of the will of testatrix was a condition subsequent; that the title to the funds was a vested interest, and that it became the duty of the administrator, with the will annexed, at the proper time, at the next term after the completion of one year from the date of the issuance of letters, to settle the estate and to distribute to the trustees the funds bequeathed to them by the terms of said will. This has never been done and substantially the trustees have never performed or attempted to perform any of their duties under said will. The will provided that in the event the board of county commissioners of Menard county, or other proper authorities refused to enter into an agreement in writing with said trustees, etc. This language refutes the construction that the trustees could supinely wait, do nothing and shift the burden of performance upon the board of county commissioners to execute this trust. Frackelton testified in his examination by the court: ''From the very first conversation I had with Mr. Golden in re-

gard to the matter it came to my attention that it was his idea that the board should come to the trustees. I should say that was two or three years after the death of Mrs. Dixon.'' Golden disputes this and says he never had any idea about the matter until just a short time before the five years expired, which makes his position not as favorable as Frackelton tried to leave it.

One of the trustees named Harry Schirding was opposed from the beginning to the execution of the trust and never did anything to carry it out, but remained a trustee for over three years and then resigned. His place has never been filled. Edward H. Golden, named trustee in the will, accepted the position of attorney for the administrator with the will annexed, and *de bonis non,* and is still counseling and advising with the administrator and in his behalf, and is presumably from the position the active agent of the residuary legatees, all heirs at law, to assist in preventing the execution of the trust. In this case the positions of trustee under the will and counselor for the administrator, a residuary legatee, are antagonistic in duties, interests and relationship, and cannot, with propriety, be held by the same person. Mr. Golden should either have undertaken to execute the trust and withheld his services from the administrator or resigned the trust if he sought the other employment.

It is not in this case a question of whether the will of testatrix, as made, was wise or unwise, practical or impractical, beneficial or within the financial resources of the commissioners of Menard county or otherwise. The property belonged to the testatrix and she had the right to do with it as she pleased, so long as she was of sound mind and violated no law of the land. No trustee under the circumstances can say that he has performed his duty in this matter until he has done every-

thing within his power, honestly and reasonably as a trustee, to see that the trust and its duties have been fully performed and carried out, if it be reasonably possible to carry out and execute the trust. That the county commissioners of the county of Menard were not financially able or deemed it unwise to have the bridge constructed does not answer the bill. The will mentions ''or the other proper authorities'' with whom the contract may be made. Under this, it would be necessary to consult the State, county, city, town, village, township or road district, where there are such, before it can be said that this bequest is incapable of execution. (Cahill's St. ch. 121, ¶41(1); sec. 41a, Joint Bridge Construction (36a); chapter 121 Smith-Hurd's Rev. Stat. 1925, 1927, 1929.) No application was ever made to any governmental authority except the county of Menard to assist in this work. No meeting was ever held by the trustees to even consider the project, and nothing has ever been done to execute the trust. The presentation made to the county commissioners of Menard county a very few days before the five years expired, by one of the trustees, does not bear the ''ear marks'' of good faith, but accentuates the delinquency of the trustees. A court of equity should not interfere with the action of trustees only so long as the trustee is exercising the discretionary powers conferred upon him honestly and reasonably. (*Martin v. McCune,* 318 Ill. 585, 590; *Fischer v. Butz,* 224 Ill. 379.) To this delinquency the residuary legatees have equally contributed by permitting the administrators to withhold the bequest from the trustees and employing one of them as a counselor in their behalf. From these acts it may be said that the testatrix has never had any trustees to carry out her wishes and bequests and the interests of the residuary legatees and the conduct of their administrator has contributed to that result.

That no active, affirmative or substantive fraud has been committed, or that no actual contract or con-

spiracy has been proven on the part of appellees, does not answer the bill. The administrators and each of them took an oath to "well and truly administer all and singular," etc., "the said estate" and "to do and perform all other acts required of me by law, to the best of my knowledge and ability," etc. Neither administrator has done this, under the terms of this will, and could not have done and performed all acts required of him by law without first consulting the properly constituted public authorities in that regard. In this case the administrators cannot shift the burden to the court which appointed them. The trust in this will is a testamentary trust, over which the county court has no jurisdiction and about which the administrators have no duties except to turn the fund over to the trustees. In place of following the law the administrators have kept the fund, invested and reinvested the same, and have made of their own positions, trustees, *de son tort*, if there be such a term, and using their own discretion have wrongfully determined that this trust cannot be and shall not be executed. In such a case the law makes the administrator subject to the duties of a trustee.

In *Maguire v. City of Macomb, supra,* the court further held:

"The law is well settled that where an executor or executrix is charged with the duties which do not properly belong to such officer but to a trustee, such executor or executrix will be held to be a trustee. The testator in this case created a trust for charitable purposes and charged his wife by name with duties properly belonging to a trustee, and the fact that he merely designated her as executrix, without distinguishing the duties imposed upon her as trustee from her duties as executrix, does not amount to a failure to appoint a trustee. She was a trustee in fact. (*Kemmerer v. Kemmerer,* 233 Ill. 327; *Welch v. Caldwell,* 226 Ill. 488.) An order of the county court discharging her as

executrix is void as to the unsettled portion of the estate.''

The residuary legatees and heirs at law have never made any objection to the conduct of the administrators, who were presumably of their selection, and that they and the remaining trustees are in accord as to the conduct of the administrators, is fairly shown by all being represented by the same counsel in this court. The administrators, residuary legatees and trustees, are all equally responsible in preventing any attempt to execute this trust.

Gifts to charity are looked upon with favor by the court and every presumption consistent with the language used will be indulged in to sustain them. *Skinner v. Northern Trust Co.*, 288 Ill. 229. No one can say from this record but that it is perfectly feasible to execute this trust through the aid of the State, or through the assistance of the local road districts, aided by the Old Salem Chautauqua Park Association and others. As to the county commissioners of the county of Menard, no plan, profiles or specifications were ever presented to them as to the bridge or its approaches, and from this record it is not shown that they, or any of them, ever had any definite information as to the cost of the work. It does appear from the answer of the present administrator, J. Colby Beekman, that he is related by marriage to the trustee Golden, and that, as a taxpayer, he has always been opposed to the execution of this trust. In this answer he is joined by nearly all of the other residuary legatees. That as a taxpayer in Menard county, J. Colby Beekman is opposed to the execution of this trust is no excuse for withholding these funds from the trustees. Apparently, the taxpayers of Menard county are amply protected. Equity will not permit a public trust otherwise valid, to fail for want of a trustee or trustees, because the trustees designated are incompetent to act. (*Stowell v. Pren-*

*tiss,* 323 Ill. 309; 3 Pomeroy's Eq. Jur. 3d ed., sec. 1926; 1 Perry on Trusts and Trustees, 6th ed., sec. 45; *Wittmeier v. Heiligenstein,* 308 Ill. 434; *Churchill v. Marr,* 300 Ill. 302.) A trustee is required to perform the trust he has undertaken, in accordance with its provisions, and the care and prudence to be exercised by him are those which ordinary men would exercise under like circumstances concerning their own affairs. (*Cowles v. Morris & Co.,* 330 Ill. 11; *Wahl v. Schmidt,* 307 Ill. 331; *Wylie v. Bushnell,* 277 Ill. 484; *Kaufman v. Loomis,* 110 Ill. 617; 2 Perry on Trusts, 6th ed., sec. 914; 3 Pomeroy's Eq. Jur., 3d ed. 1070.)

In making a charitable bequest, whether the provisions of the will be construed as creating a condition subsequent or a conditional limitation, the fact alone that the time specified in the will for the accomplishment of a charitable purpose has expired will not defeat the charitable gift. (*Peek v. Woman's Home Missionary Society,* 304 Ill. 427 (citing with approval *Adams v. First Baptist Church,* 148 Mich. 140); *Lynch v. Melton,* 150 N. C. 595; *Mills v. Davison,* 54 N. J. Eq. 659; *In re Pierpont's Will,* 72 Vt. 204; *Appeal of Beardsley,* 77 Conn. 705; *Capen v. Skinner,* 177 Mass. 84; *Massachusetts Institute v. Attorney General,* 235 Mass. 288.) In the case of *Peek v. Woman's Home Missionary Society, supra;* also in 293 Ill. 337, 339 and 340, where there was a devise upon a condition expressed, the language of the will was as follows: "In case said society shall not desire to establish said orphanage upon the said premises or shall fail or neglect so to do within three years after my death, or having established said orphanage shall at any time thereafter for the space of three consecutive years fail to maintain and keep said orphanage in active operation, I direct that this devise to the Woman's Home Missionary Society shall thereupon become null and void and said property shall revert to my estate; and I

hereby direct that in that case of such reversion such real estate, or the proceeds thereof, shall be divided into two equal parts, one of said parts to be divided among my heirs according to the laws of distribution of the State of Illinois, and the other part to be divided in the same manner among the heirs of my late husband, Frank F. Peek.''

In discussing the provisions of this will the court said in the same case (*Peek v. Woman's Home Missionary Society*), 304 Ill. at page 436: ''When the provision of the will with reference to establishing the orphanage within three years is read in connection with the entire will, it seems clear that the primary purpose of Mrs. Peek found in this provision of her will was to provide that the society might take the farm for the establishment of an orphanage, and that she did not have in mind the opposition and litigation started by the heirs of herself and her husband, and later on the obstruction by her tenant, Rebuck, in preventing the society from obtaining speedy possession of the farm in order to establish such orphanage, and the ruling of this court on the former appeal that the intent of the testatrix as shown by the will,—the spirit and not the letter,—should control in reaching a proper conclusion on that question is in accord with the decisions generally in other jurisdictions.'' In the same case the court, citing from *Mills v. Davison*, 54 N. J. Eq. 659, quoted: '' 'The dominating rule in the construction of deeds and other written instruments is to so construe them as to give effect to the intention of the parties as far as is permitted by the rules of law. The prefatory words in the *habendum* in the deed in question are, ''upon this express condition and limitation.'' In the court of chancery the word ''condition'' in this sentence was construed as a condition designed for the benefit of the grantors, to defeat the estate granted. Such a construction, it seems to me, is contrary to the intent of the grantors in making the gift.' ''

Following the above quotation the court in the *Peek* case said: "It seems clear from a reading of this opinion that the argument of counsel for appellants as to whether the provisions of the will created a condition subsequent or a conditional limitation is immaterial, for whether the will created a condition subsequent or a conditional limitation, the court will look with favor on the efforts of the society to comply with the condition."

Applying the analogy of the above quotations to the case at bar, it seems clear that Mary F. Dixon did not impose the five-year condition upon the trust she created in her will for her own benefit or that of her heirs at law, but that the trustees she had nominated should not be dilatory in the execution of the trust. Five years would have been ample time had the trustees nominated in her will intended from the beginning to carry out the provisions of the trust imposed upon them, either to execute the trust or determine in a bona fide manner that the trust was incapable of execution. It was the intention of the testatrix, as gathered from the entire will, that the general public should enjoy the benefit of the gift she had made.

As stated by the court in the language quoted above, a court of equity does look with favor upon the efforts of a beneficiary to comply with a condition, but this case affords an example where equity should look much more favorably upon the situation than in most cases. There is an important distinction between the instant case and the case of *Peek v. Woman's Home Missionary Society, supra,* and the number of leading cases in foreign jurisdictions cited, quoted and discussed in the opinion in that case. In those cases, the charitable gift was made directly to the beneficiary and the beneficiary failed to meet the terms of the condition subsequent or conditional limitation, yet the court of equity granted the relief. In the instant case the bequest is made to trustees for the building of a memo-

rial bridge and the laying out of a public highway for the use and benefit of the general public. The general public is the beneficiary. There were no duties imposed upon it. It has been guilty of no negligence or failure to meet any conditions. The trustees, nominated by the will creating the public trust, were charged with securing the benefit of this gift for the public. They have practically refused to accept the trust, and the general public, the beneficiary, is seeking through its representative, the attorney general of Illinois, to have the remaining trustees removed and trustees appointed who will accept and discharge the trust. It is plain that equity should much more readily enforce a trust for the use and benefit of the general public, which could not be held culpable for failure to meet any condition imposed upon the gift, and the failure is occasioned by the refusal of trustees to accept the trust in good faith, than where the gift is made directly to the beneficiary, and the question arises as to whether the beneficiary has made a reasonable and honest effort to meet the conditions of the gift.

Appellees have contended in this court that the removal of the present trustees, with an extension of time, would not result in securing the execution of the trust for the reason that the county commissioners and road officials of Menard county would not co-operate. This contention is not only unsound legally, but from the record does not conform to the fact. The bill recites the fact that the Old Salem Chautauqua Association has always, through its officials, been ready to co-operate in securing the right of way for said highway and assisting in carrying out the conditions of said trust. The witness F. H. Whitney, president of the Chautauqua Association, testified to the willingness of the association and its officers to co-operate, but there were never two of the three trustees named in the will who ever intended to carry out the trust with

whom the Chautauqua Association and its officers could negotiate.

Our attention is called to the wording of the will, which provides that the necessary approaches of the bridge and the right of way be obtained "without cost to the trust fund." The will does not provide that the county pay for these items; so, in view of the language quoted above, the door is thrown wide open for donations of right of way and donations for cost of approaches and cost of constructing and surfacing the grade. If the proposed highway were opened up without any appreciable expense to the county or its road districts, there is not any reason why the county officials of Menard county should not only be favorable but enthusiastic for the construction of said public highway and memorial bridge.

The defense was interposed by the answers of some of the residuary legatees that the right of way, bridge and approaches could not be built as provided by said will for less than $50,000. Appellant very effectively met this defense with the testimony of George Burch, chief bridge engineer of the highway department of Illinois, and the testimony of H. D. McCreary, district engineer of the highway department of Illinois. Mr. Burch testified that he had prepared in his office under his supervision a design of a bridge across the Sangamon river near Old Salem Chautauqua Park, as described in said will, and Mr. McCreary testified that he surveyed and made plans and specifications for the construction of necessary approaches to said bridge and a roadway leading southwesterly from the public road east of Old Salem Chautauqua Park over the site of said proposed bridge to a point on the public highway south of Petersburg, Illinois, known as the "Lincoln Trail"; that said witnesses Burch and McCreary both testified that a bridge built pursuant to the design offered in evidence would cost $30,000 to construct and that the approaches to said bridge, the right of way

and the construction of the roadway, as shown by the plans and specifications offered in evidence, would cost in all between $4,000 and $5,000. There is now more than $36,000 in the trust fund in the hands of J. Colby Beekman, administrator *de bonis non* with will annexed, appellee, so that the trust fund is more than ample to construct said memorial bridge, according to the proofs.

The remedy for a breach of trust or a failure of the trustees to perform their duty is the removal of the trustees and the appointment of new trustees, who will carry out the provisions of the trust (*Martin v. Mc-Cune,* 318 Ill. 585; *Brower v. Callender,* 105 Ill. 88). If new trustees are appointed it will be necessary to extend the time for the execution of the trust. In this connection, in *Peek v. Woman's Home Miss. Society, supra,* 293 Ill. 348, Mr. Justice Farmer said: "If the heirs seeking to profit by the delay in establishing the orphanage by their own acts and conduct materially contributed to produce the delay, it would seem most unconscionable to allow them to benefit by such acts and conduct." The court further said in 304 Ill. 427, at page 435, as to when the orphanage should be started: "It 'should receive a reasonable construction, especially in view of the nature and character of the devise and the devisee, and in determining whether the delay was reasonable and prudent or negligent and unreasonable all evidence throwing light on the question should be admitted and considered.' " And in the same case, on page 440, the court further said: "that if such proof, when taken, showed that the delay was caused by the action of appellants or other circumstances which excused appellee, such delay, under a fair construction of the will, would not prevent the society from having title to the farm."

From all of these authorities and the proofs in this case, we conclude that the public have not forfeited their right to have this trust executed and the public

improvement constructed, and that the title to said fund still remains in the trustees to carry out the provisions of the will of the testatrix. Mary F. Dixon, in the making of said will contemplated that after the settlement of her said estate and the distribution of said trust fund to her three trustees, that said trustees would still have a period of three and one-half years in which to enter into a contract in writing with the commissioners of Menard county, or other proper authorities, to build and construct such suitable approaches at either end of said bridge as might be necessary to afford ample means of travel over said bridge, and should also cause to be laid out and to be opened up a public highway commencing at some convenient point on the public highway commonly known as the "Lincoln Trail," running south from the City of Petersburg, Illinois, and extending in an easterly direction across said proposed bridge and connecting with the public highway east of said Chautauqua Park, said approaches to said bridges and said public highway to be laid out and opened up without cost to said trust fund.

Accordingly, the decree of the circuit court of Menard county is reversed and the cause remanded to that court, with directions to enter a decree removing the three trustees named in said will and in their place to name and appoint three trustees, who will reasonably and honestly execute the terms of said trust, and a decree be entered otherwise as prayed for in said bill of complainant; that the time to carry out the terms of said trust be extended for a period of three and one-half years from the distribution of said trust funds now in the hands of J. Colby Beekman, administrator *de bonis non* with the will annexed, and the payment of the same, with accumulations thereto, to the said trustees when appointed.

*Reversed and remanded with directions.*