Charles **E.** Hinckley, as Administrator de bonis non With Will Annexed of the Estate of Clarissa **N.** Hinckley, Deceased, et al., Plaintiffs-Appellees, v. Caroline Crumb Caldwell, et al. (Appeal by Certain Defendants) Defendants-Appellants.

Gen. **No.** 11,590.

Second District, Second Division.

May 4, 1962.

Stuart, Neagle & West, and Burrell Barash, of Galesburg, for appellant.

Hanlon & Rueidig, of Galesburg, William G. Clark, Attorney General, of Chicago, for appellee.

SPIVEY, P. J.

This is an appeal from an order of the Circuit Court of Knox County, Illinois, construing the last will and testament of Clarissa N. Hinckley, deceased.

Clarissa N. Hinckley died January 15, 1928, leaving a will dated September 18, 1914, with codicil thereto dated February 9, 1922.

The applicable portions of the codicil to Clarissa N. Hinckley's will, after devising a fractional eighty acres of land to Ada Hinckley Chapman for life, then to Pluma E. Hinckley for life, and at the death of the survivor to be sold and the proceeds divided, provided:

"(b) . . . .

"One-half thereof shall be divided, share and share alike, between the daughters of my sister, Dency Woods, namely: Emeline Woods Crumb, Mary Woods Hodgeson, Lola W. Woods and Calista Woods Barstow. The remaining one-half shall go to the Pluma Hinckley Home as provided for in Paragraph D hereof.

"(c) I give, devise and bequeath to my said daughter, Pluma E. Hinckley, the rest and residue of my

estate, both real and personal, for and during the period of her natural life and if, at her death, shall be survived by my daughter, Ada Hinckley Chapman, then it is my will that the said Ada Hinckley Chapman shall have a life estate in said rest and residue of my estate. Upon the death of the survivor of my two said daughters, then said rest and residue of my estate shall be converted into cash and divided in the same manner as in that event provided for in paragraph B and D hereof.

"(d) If upon the death of the survivor of my daughters, Ada Hinckley Chapman and Pluma E. Hinckley, the said Pluma E. Hinckley shall have established during her lifetime a home for worthy women in the City of Galesburg, Illinois, known as the 'Pluma Hinckley Home' or shall have provided for the establishment of such a home by her Last Will and Testament, then the bequests which in Paragraphs B and C hereof I have made to the Pluma Hinckley Home shall be understood to mean the same institution or home which shall have been so established or provided for by said Pluma E. Hinckley; and my said bequests to said Home shall be paid to the persons who shall have been duly named or appointed as trustees or directors of said Home or institution, subject to the same conditions which the said Pluma E. Hinckley shall have prescribed in establishing or providing for the establishment of said Home. The administrator or executor or the personal representative of the survivor of my two said daughters is hereby directed to pay said bequests to such trustees or directors. If upon the death of the survivor of my said daughters no such Home for worthy women shall have been established or provided for by the Will of Pluma E. Hinckley, then it is my will that the bequests I have made to the Pluma Hinckley Home in Paragraphs B and C hereof be cancelled and annulled and in that event I give, devise and bequeath to my

123

nieces mentioned in Paragraph B hereof all the property described in Paragraphs B and C of this codicil, said property to be divided between my said nieces in the same manner set forth in Paragraph B hereof."

Reference to the last will and testament of Pluma E. Hinckley and the orders of the Circuit Court of Knox County in construing that will are necessary for a better understanding of the court's decree in the instant case.

Pluma E. Hinckley died leaving a will dated April 4, 1916, which was admitted to probate on February 14, 1929 by the Probate Court of Knox County. Among other things the will provided,

"ELEVENTH: *It is my intention and desire to establish a Home for worthy women who need a home,* and I therefore will, devise and bequeath to the trustees hereinafter named, and their successors in trust, the following described real estate: Beginning at a point where the center of the highway on the West side of the Southwest Quarter of Section One (1), Township Eleven (11) North, Range One (1) East of the Fourth Principal Meridian in Knox County, Illinois, is intersected by the North line of the right of way of the Chicago, Burlington & Quincy Railroad, as it crosses said quarter, running thence North to a point Four (4) Rods North of the house on said premises, known as the C. A. Hinckley residence, thence due east to the North line of the right of way of the Chicago, Burlington & Quincy Railroad in a Southwesterly direction to the place of beginning; supposed to contain twelve to fifteen acres. This piece of land, with the buildings thereon, I will and bequeath to said trustees for the purpose of establishing a home as above stated; the buildings and necessary equipment to be kept and maintained for that purpose only. I will, devise and bequeath the rest, residue and remainder of my estate to said trustees, after the administration of my estate

124

by my executor, for the purpose of maintaining said home, and I hereby authorize and empower the said trustees to sell any of my real estate, except the portion set apart in my will for said home, if, in their judgment, it is to the interest of the trust herein established, and I direct that they shall loan the proceeds and the money in their hands coming to them from my estate on real estate mortgage securities only, and to use the income alone for the support and maintenance of the said home. The said home shall be known as the 'Pluma Hinckley Home.' I direct that said home shall be managed and controlled by three trustees, one of whom shall be a woman. In my will I have named three trustees to act in that capacity, and I hereby provide that in case they should either or any of them fail or refuse to accept said trust, and in case of their death, resignation or a vacancy from any other cause, that the Judge of the Circuit Court of Knox County, Illinois, shall appoint said trustees and their successors. I shall not in my will attempt to prescribe rules or regulations to said Trustees to determine the persons who shall be admitted and the terms and conditions upon which they shall be admitted to said home, and the matter of the discipline and regulation and the charge that shall be made to those who are able to contribute in whole or in part for their care. I also wish that no worthy woman shall be denied admittance, if the trustees can provide for her care, even though she may not have any means to help pay her way. I empower the said trustees to change, alter or rebuild the buildings on said premises. *I feel that the location for said home is desirable and convenient, and it is my wish that the home be and remain where I have located it, but in the event of anything occurring making it impossible to maintain said home at that point,* or in case said land is required or taken for railroad or any other public purpose, *then I direct that*

125

*said trustees shall and may establish and maintain the said home in the city of or near Galesburg, Illinois, at such place as they may choose.* I direct that said trustees shall give bond to be approved by the Circuit Court of Knox County, Illinois, for the faithful performance of their duties and safe keeping of the funds entrusted to them, and I know that the said Court or the Judge thereof, will in the selection of Trustees aim to choose persons who are competent and who will be willing to give their services, or at least make a minimum charge for such services in the conducting of this trust. I am desirous that the portion of my estate bequeathed for this purpose shall be used to the best advantage for women who may need assistance, and I do not want any construction placed upon my will that will hamper or prevent the best use that can be made of the funds left by me for this purpose. I also direct that should the trustees have offers of money or property from other persons for the benefit of this charitable work, they shall be authorized to receive the same and use it as directed by the donors of said money or property, and they may solicit funds, providing only that it shall be for the general purpose of this trust." (Emphasis supplied.)

The Circuit Court of Knox County in Chancery Cause No. 15995 construing the will of Pluma E. Hinckley entered the following three orders each of which is in full force and effect.

On September 14, 1956, that court found and ordered that it is impractical, inexpedient and impossible to apply the real estate left by Pluma E. Hinckley, or the proceeds of the sale thereof for the specific charitable purpose, in the particular way, and for the purpose of establishing a home for worthy women who need a home either on said real estate or in or near the City of Galesburg, Illinois, as set forth in paragraph Eleventh of the will. It was further found and

126

ordered that the specific charitable trust provided for in the same paragraph was incapable of being carried out in its original form.

On July 1, 1958, that court found and ordered that the will showed a general charitable intent, the intent was to provide for worthy women who were in need of a home, her intent was much broader than the specific home, she did not want any construction placed upon the will that would hamper or prevent the best use of her property and money for this purpose, and that the cy pres doctrine was applicable with respect to the property passing under paragraph Eleventh of the will.

That court again on July 7, 1959, found and ordered that the property passing under paragraph Eleventh of the will did not and shall not pass as intestate property, all of said property be and the same is applied under the cy pres doctrine in furtherance of the general charitable intent expressed in the will, and the real estate be sold and the proceeds together with any personal property passing under paragraph Eleventh be paid to Isyl B. Walton, Mabel Woolsey and Dale F. Ruedig, Jr., Trustees appointed under decree of this court in Chancery Cause No. 14767 to be used and applied in accordance with the terms of that decree. The decree further authorized the trustees named to aid and assist worthy women in gaining admission and maintaining residence in the Illinois P. E. O. Home at Knoxville, Illinois, and to apply and expend said funds and the income therefrom for the purpose of helping worthy women from or near the City of Galesburg, Illinois, gain admission and maintain residence in such other homes or facilities as they may select from time to time.

The trial court after making extensive findings in the decree appealed from, ordered, adjudged and decreed, (1) Paragraphs (b), (c) and (d) of the codicil

127

■■■■■■■■■

to the will of Clarissa N. Hinckley create and contain a valid bequest of one-half of the proceeds of the property in question to the home for worthy women provided for under the Eleventh clause of Pluma E. Hinckley's will subject to the life estates to her two daughters whom are now deceased; (2) that the same paragraphs of the codicil when taken in connection with the Eleventh Clause of Pluma E. Hinckley's will show a general charitable intent with reference to the bequest of one-half of the proceeds of the property in question to the home for worthy women provided for under the Eleventh clause of Pluma E. Hinckley's will, and the clear intent of Clarissa N. Hinckley as to said bequest was to provide for worthy women who were in need of a home, (3) while the testatrix specifically mentioned the home known as "Pluma Hinckley Home" in paragraphs (b) and (d) her intent is much broader than that specific home and the real purpose that she had in mind was to aid worthy women who need aid and not by the building of a home and as stated in the Eleventh clause of Pluma E. Hinckley's will, Clarissa N. Hinckley did not want any construction placed upon paragraphs (b), (c), and (d) that will hamper the best use of said proceeds for this purpose; (4) the cy pres doctrine is applicable with respect to said bequest to the said home for worthy women; (5) that the trustees, Isyl B. Walton, Mabel Woolsey and Dale F. Ruedig, Jr., in accordance with their authority under the decree in Chancery Cause No. 14767 and pursuant to and in accordance with the decree in chancery Cause No. 15995 and this decree can most nearly carry out the terms and provisions of the trust created by paragraphs (b), (c), and (d) of the codicil in accordance with the general charitable intent of the testatrix to aid and provide for worthy women who are in need of a home and (6) that the real estate in question be sold and the net proceeds of the sale of such real estate,

together with any other personal property in the hands of the administrator, be distributed one-half to certain other named persons and one-half to the trustees appointed by the decree in Chancery Cause No. 14767 to be used and applied in accordance with the terms of that decree and that said trustees and their successors are authorized and directed to expend said fund and the incomes therefrom to aid and assist worthy women in gaining admission to and maintaining residence in the Illinois P. E. O. Home in Knox County, Illinois, and the trustees are authorized to apply and expend said trust fund and income for the purpose of helping worthy women from or near the City of Galesburg, Illinois, gain admission to and maintain residence in such other homes and facilities as said trustees may select from time to time.

The determination of this appeal hinges on the question of whether the codicil to the last will and testament of Clarissa N. Hinckley evidences a general charitable intent capable of being impressed with the cy pres doctrine.

The answer to this often perplexing question falls within well established rules.

██ ██ The paramount rule of testamentary construction is to determine the intention of the testator as expressed in her will. Effect must be given to the whole will, and the testator's intention cannot be determined from the language of any particular clause, phrase or sentence. (Stites et al. v. Gray et al., 4 Ill2d 510, 123 NE2d 483.)

██ ██ Charitable gifts and trusts are favorites of the law and courts will uphold or declare the validity of, and give effect to such trusts and gifts if it is possible to do so consistently with established rules or principles of law. (Bruce v. Maxwell, 311 Ill 479, 143 NE 82; Farmers' and Mechanics' Bank v. Griffith, 352 Ill 323, 185 NE 854.) Every presumption consistent

with the language used will be indulged in to sustain a charitable trust or gift. (Peek et al. v. Women's Home Missionary Society, 304 Ill 427, 136 NE 772; Franklin v. Hastings, 253 Ill 46, 97 NE 265; Skinner v. Northern Trust Co., 288 Ill 229, 123 NE 289.)

■ Equity considers the general charitable purpose of a testator or donor as the substance of the devise or gift, the mode pointed out in the will or conveyance for effectuating this purpose being a mere incident of the gift. (First National Bank of Chicago v. Elliott, 406 Ill 44, 92 NE2d 66.)

In Scott on Trusts (Second Edition) Volume IV, Sect 339.3, it is stated,

"The doctrine of cy pres may be applied where the particular purpose of the testator fails at the outset. Where this purpose is at the time of the testator's death impossible of accomplishment or when it is impracticable to carry out his purpose, the trust does not fail if the testator would presumably have desired that it should be applied to other purposes if he had known that it would be impossible or impracticable to carry out his particular purpose. Not infrequently however, the trust fails because the particular purpose is held to be the essence of the intended trust.

"On the other hand, where at the time of the creation of the trust it is possible to carry out the specific directions of the testator, but in course of time conditions change so that it becomes impossible or impracticable to carry out these directions, the cy pres doctrine is almost invariably applied, and it is rare indeed that the trust is held to fail altogether."

The Supreme Court in discussing many of the principles here involved said in Village of Hinsdale v. Chicago City Missionary Society, 375 Ill 220, 30 NE2d 657.

"Charitable gifts are viewed with particular favor by the courts, and every presumption consistent with the language contained in the instruments of gift will be

■

employed in order to sustain them. (Peek v. Women's Home Missionary Society, 304 Ill 427, 136 NE 772; Skinner v. Northern Trust Co., 288 Ill 229, 123 NE 289.)

"Equity will consider the general charitable purpose of the donor as the substance of the gift, and the mode pointed out in the conveyance for effectuating that purpose, as a mere incident of the gift. (Crerar v. Williams, supra; Heuser v. Harris, 42 Ill 425.) Where a literal execution of the charity becomes inexpedient or impracticable, and the settlor has manifested a general intention to devote the property to charitable purposes, the trust will not be permitted to fail, but the court will execute it cy pres. (Mason v. Bloomington Library Ass'n, supra; Kemmerer v. Kemmerer, 233 Ill 327, 84 NE 256; 2 Bogert on Trusts and Trustees, sec 438.) It is not necessary that the mode prescribed be impossible of execution, but resort to the shelter of the cy pres rule is available if use in the designated manner is no longer feasible. (Board of Education v. City of Rockford, supra.) . . . The fact that the donor directed a use of the funds in connection with a specific institution, or for the construction of a new building, will not prevent an application of the funds in an association different from the one named (Mason v. Bloomington Library Ass'n, supra) or their devotion to an existing enterprise of the same character. (Bruce v. Maxwell, supra; Mars v. Gilbert, supra.)"

Appellants rest their case upon the proposition that the trust provisions contained in the codicil to the will of Clarissa N. Hinckley did not express a general charitable intent to provide a home for worthy women. They say for that reason, under the circumstances of this case, the trust devise so provided lapsed.

Clarissa N. Hinckley and Pluma E. Hinckley were mother and daughter and had evidently lived together

131

for many years. It is reasonable to conclude that they had in their lifetime discussed the subject of providing a home for worthy women.

On April 4, 1916, Pluma E. Hinckley executed a will containing a trust provision (paragraph Eleventh) the purpose of which was "to establish a home for worthy women who need a home." She stated that said home shall be known as the "Pluma Hinckley Home." Concluding she stated she did not want any construction placed upon her will that would hamper or prevent the best use of the funds for the purpose of aiding women who may need assistance.

Following the execution of Pluma's will, Clarissa N. Hinckley on February 9, 1922, added a codicil to her will of September 18, 1914. By paragraphs (b) and (d) she obviously wished to participate in the charitable intentions of Pluma.

The codicil provided that upon the death of the survivor of her two daughters her estate was to be reduced to cash and divided one-half to certain named persons and one-half to the Pluma Hinckley Home as provided in paragraph (d) of the codicil.

Paragraph (d) provided, "If upon the death of my daughters, . . . , the said Pluma E. Hinckley shall have established during her lifetime a home for worthy women in the City of Galesburg, Illinois, known as the 'Pluma Hinckley Home' *or shall have provided for the establishment of such a home by her Last Will and Testament,* then the bequests shall be understood to mean the same institution or home which shall have been so established *or provided for* by said Pluma E. Hinckley; and my bequests to said Home shall be paid to the persons . . . named or *appointed as trustees or directors of said Home or institution, subject to the same conditions which the said Pluma E. Hinckley shall have prescribed in establishing or providing for the establishment of said Home.* . . . If upon the

132

death of the survivor of my said daughters *no such Home for worthy women* shall have been established *or provided for by the Will of Pluma E. Hinckley,* then it is my will that the bequests made to the Pluma Hinckley Home . . . be cancelled and annulled and in that event I give and bequeath to my nieces mentioned in Paragraph B . . . ." Emphasis supplied.

Webster defines the word home as "one's dwelling place; abode or one's family" and the word such as "of this or that kind, character or degree; of the sort, quality, etc., specified or implied."

Pluma E. Hinckley, at the time of her death and that of her sister, had not established a home for worthy women in the City of Galesburg, Illinois, known as the "Pluma Hinckley Home." She had at that time, however, by the last will and testament *provided for such* a home for worthy women who need a home.

Clarissa N. Hinckley's trust bequest was to lapse only if Pluma had not established, in her lifetime, *such* a home or *provided for* such a home by her last will and testament. Pluma had in fact provided for such a home either at the place expressly stated or at some other place to be chosen by the trustees.

■ In determining whether a trust instrument expresses a general charitable intent, courts look for what has been generally described as substantial intent, primary intent, paramount intent or leading purpose, vis.: the essence of the trust.

■ A perusal of the codicil and applying the rules of construction we have suggested leads us to the conclusion that Clarissa N. Hinckley possessed a general charitable intent to provide a home for worthy women who need a home. Any reference to the "Pluma Hinckley Home" was no more than a mode or manner for carrying out the essence of the trust. The codicil indicated no manifestation to the contrary.

Concluding as we have that Clarissa N. Hinckley expressed a general charitable intent to provide a home for worthy women who need a home, we find that the application of the cy pres doctrine was proper.

Appellant calls our attention to two cases wherein the application of the cy pres doctrine was denied. Quimby v. Quimby, 175 Ill App 367, and Chicago Daily News Fresh Air Fund v. Kerner, 305 Ill App 237, 27 NE2d 310. Both cases are distinguishable.

In each of these cases relied upon there was a gift to a particular named beneficiary without any expression of a general charitable purpose for a general class in need of charity in the trust instrument.

The decree of the Circuit Court of Knox County is affirmed.

Affirmed.

WRIGHT and CROW, JJ., concur.